IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

MABLE CALEB, JACKIE ANDERSON,      §
DIANN BANKS, HERBERT LENTON,       §
and PATRICK COCKERHAM,             §
                                   §
       Plaintiffs,                 §
                                   §
v.                                 §      CIVIL ACTION NO. H-12-0675
                                   §
DR. TERRY GRIER, ELIZABETH MATA    §
KROGER, DAVID FRIZELL, ESTEBAN     §
MAJLAT, and HOUSTON INDEPENDENT    §
SCHOOL DISTRICT,                   §
                                   §
       Defendants.                 §

MEMORANDUM AND ORDER

Pending are Defendants David Frizell and Esteban Majlat's Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 59), Defendant Elizabeth Mata Kroger's Third Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 60), and Defendants Houston Independent School District and Terry Grier's Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 64).[1] After having

_____

[1] Plaintiffs' Motion for Extension of Time to File Response to Defendants' Motion to Dismiss (Document No. 75) is denied as moot, inasmuch as Plaintiffs have since filed further responses, which have all been considered. Plaintiffs recently filed an Opposed Motion for Leave to File Supplement to Their Third Amended Complaint (Document No. 92). In light of Plaintiffs' prior filings of complaints--the *Third Amended* Complaint is now under review--and with no consequential transactions, occurrences, or events having occurred after Plaintiffs filed their current pleading of more than 100 pages in length, the Motion to File Supplement (Document No. 92) is DENIED. *See* FED. R. CIV. P. 15(d).

Plaintiffs' Motion for Leave to File Designation of Expert Witness (Document No. 83), which is opposed by Defendants HISD,

carefully considered the motions, responses, replies, sur-reply, and applicable law, the Court concludes as follows.

## I.  Background

Plaintiff Mable Caleb ("Caleb") was formerly the principal of Key Middle School ("Key"), and Plaintiffs Jackie Anderson ("Anderson"), Diann Banks ("Banks"), Herbert Lenton ("Lenton"), and Patrick Cockerham ("Cockerham") had all worked at Key in various capacities.[2] Plaintiffs' prolix Third Amended Original Complaint--111 pages in length--describes in minute detail all sorts of events and interactions that Plaintiffs allege give rise to this action. In essence, Plaintiffs allege that the Superintendent of the Houston Independent School District ("HISD"), Defendant Terry Grier ("Grier"), targeted Caleb for dismissal because of things she said and people with whom she associated, and that he instituted a harassing investigation into her activities at Key and her transition when she was appointed principal at Kashmere High School ("Kashmere").  Plaintiffs Anderson, Banks, and Cockerham, who did not lose their jobs, and Lenton, who did, allegedly were targeted because they worked closely with Caleb.  The complaint alleges that Grier retained Defendant Elizabeth Mata Kroger ("Kroger") and her

---

Grier, and Kroger, is DENIED as having not been timely filed before the deadline for identifying expert witnesses expired.

[2] Document No. 48-1 at 4 (3d Am. Cmplt.).

law firm to conduct an investigation regarding the improper transfer of HISD property from Key to Kashmere, cheating on standardized tests, and other alleged improprieties at Key. Kroger, in turn, hired David Frizell ("Frizell") and Esteban Majlat ("Majlat") to assist in the investigation.[3]  During their investigation Kroger, Frizell, and Majlat interviewed Anderson, Banks, Lenton, and Cockerham on more than one occasion, and allegedly treated them rudely, made accusations that they were lying, were protecting Caleb, and were otherwise guilty of being involved in the alleged improprieties.

Plaintiffs allege that their First Amendment rights to free speech and free association were violated, and Plaintiff Caleb alleges a deprivation of her constitutionally-protected liberty interests in the form of a procedural due process name-clearing hearing.  Finally, Caleb accuses Defendant Grier of denying her equal protection under the law.  All Defendants have moved to dismiss the claims under 12(b)(6).

## II.  Legal Standard

### A.  Rule 12(b)(6) Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV.

---

[3] Id. at 5-6.

3

P. 12(b)(6).   When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one.   *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982).   The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims.   Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint.   *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).   To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).   While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

4

B.   42 U.S.C. § 1983

    Plaintiffs seek compensatory and punitive damages for alleged violations of their constitutional rights.  Although their complaint does not cite 42 U.S.C. § 1983, Section 1983 is the statute that provides a private cause of action for redressing a violation of federal law or "vindicating federal rights elsewhere conferred."  Albright v. Oliver, 114 S. Ct. 807, 811 (1994) (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694 n. 3 (1979)).  To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).  A § 1983 plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  Schultea v. Wood, 47 F.3d 1427, 1433 (5th Cir. 1995).

    III.  HISD's and Terry Grier's Motion to Dismiss

A.   First Amendment Free Speech Claims

    To recover on a First Amendment retaliation claim, a plaintiff must show that: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her

5

interest in commenting on matters of public concern outweighs the public employer's interest in efficiency; and (4) the speech motivated the adverse employment action. DePree v. Saunders, 588 F.3d 282, 286-87 (5th Cir. 2009), *cert. dismissed*, 130 S. Ct. 3450 (2010). In other words, "[t]o prevail, [plaintiff] must show that she engaged in protected conduct and that it was a motivating factor in her discharge." Beattie v. Madison Cty. Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001).

"[B]efore asking whether the subject-matter of particular speech is a topic of public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or as part of her public job." Davis v. McKinney, 518 F.3d 304, 312 (5th Cir. 2008) (quoting Mills v. City of Evansville, 452 F.3d 646, 647 (7th Cir. 2006)); *see also* Garcetti v. Ceballos, 126 S. Ct. 1951, 1960 (2006) ("[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."). The focus of this inquiry is not on the content of the speech, but on "the role the speaker occupied when [she] said it." Davis, 518 F.3d at 312 (quoting Williams v. Dallas Indep. Sch. Dist., 480 F.3d 689, 692 (5th Cir. 2007)). The distinction is between "speech that is 'the kind of activity engaged in by citizens who do not work for the government,' . . . and activities undertaken in the course of

performing one's job."  Williams, 480 F.3d at 693 (quoting Garcetti, 126 S. Ct. at 1962).  "Even if the speech is of great social importance, it is not protected by the First Amendment so long as it was made pursuant to the worker's official duties." Id. at 692 (citing Garcetti, 126 S. Ct. at 1960).  Moreover, even if speech is "not necessarily required" by an employee's job duties, it is not protected if it is sufficiently related to them.  Charles v. Grief, 522 F.3d 508, 513 (5th Cir. 2008) (discussing Williams, 480 F.3d at 693).  A number of factors guide a court in determining whether an employee is speaking pursuant to her official duties: the relationship between the topic of the speech and the employee's job; whether the employee spoke internally up the chain of command at her workplace; and whether the speech resulted from special knowledge gained as an employee.  See Davis, 518 F.3d at 312-14; see also Gentilello v. Rege, No. 3:07-CV-1564-L, 2008 WL 2627685, at *3 (N.D. Tex. June 30, 2008).  Whether an employee is speaking as a citizen or pursuant to her employment is a question of law for the Court to resolve, even though it "involves the consideration of factual circumstances surrounding the speech at issue." Charles, 522 F.3d at 513 n.17.

1.  Caleb

Caleb alleges that her First Amendment rights were violated because she made protected speech and suffered an adverse

employment action because of that speech.[4]  Caleb asserts that she
made the following protected speech:

- In 2005, Caleb's speech refusing to agree with
  accusations made against Key Math Department Chairman,
  Richard Adebayo, regarding cheating on standardized
  testing.[5]

- In 2007, Caleb's speech when she agreed with students'
  and staff's claims that there was toxic mold at Key when
  questioned by the media;[6] and again, when she spoke to
  federal agencies dealing with public health at Key.[7]

- On November 12, 2009, Caleb's speech at a town hall
  meeting at New Mt. Calvary Baptist Church that was held
  to discuss the appointment of a new principal to replace
  Caleb at Key Middle School when she moved to Kashmere
  High School.[8]

- On November 13, 2009, Caleb's speech in a non-public
  meeting between her and Grier, when she admonished Grier

---

[4] Document No. 48-1 at 92, 99.

[5] Id. at 92-93.

[6] Id. at 8-9, 92-93.

[7] Id. at 92.

[8] Id. at 92-93.

for making a remark to her during their conversation that she believed was "racially dismissive."[9]

- On or about March 22, 2010, Caleb's speech to <u>The Houston Chronicle</u> about her intention to retire from HISD effective August 2010, and denying "Grier's and Mata Kroger's substantially false accusations against her."

Caleb alleges no facts to show that her 2005 speech--five years before her separation from HISD--was protected speech. From what she does plead, the plain inference is that her speech addressed an issue on which she was speaking as the principal of Key, regarding an issue on which she had special knowledge based on her position at Key, and on which there was a direct relationship between the topic of speech and the performance of her job. Moreover, the gap of time between this 2005 speech and the alleged retaliation in 2010--a period within which Caleb was promoted from middle school principal to being a high school principal--makes wholly implausible any inference of free speech retaliation. Caleb has pled no facts regarding this alleged speech to state a claim for relief above a speculative level.

Almost as remote in time from when she separated from HISD was Caleb's speech on toxic mold, in which she alleges that she answered questions from the media and spoke to federal agencies about this condition at Key. The alleged speech was not made

---

[9] <u>Id.</u> at 95.

internally within HISD, which is an important factor to consider in determining whether Caleb was speaking as part of her public job. It was also speech regarding a matter of public concern, namely, toxic mold at a public school.  But this speech was also made years before the alleged retaliation in 2010, and Plaintiffs allege no direct evidence or any "plausible chronology" that permits a reasonable inference of free speech retaliation.  *Compare* <u>Brady v. Houston Indep. Sch. Dist.,</u> 113 F.3d 1419 (5th Cir. 1997).  Other facts pled by Plaintiffs lead to the inevitable inference that Caleb's 2007 speech was *not* a cause of her 2010 separation.  Plaintiffs' complaint alleges that Caleb was *correct* in her assessment of the presence of toxic mold, that HISD thereafter ordered the reconditioning of Key, and that HISD then reopened Key "under Caleb's leadership" in the 2008-09 school year.  Caleb's 2007 speech was made long before Grier became HISD Superintendent, Caleb was vindicated in what she said, and--according to Plaintiffs' pleading--she was rewarded with Key being reopened "under Caleb's leadership."  To allege that Grier and HISD retaliated against Caleb in April 2010 for this remote speech given in 2007 is entirely conclusory and insufficient to state a claim upon which relief can be granted.

On November 12, 2009, when Caleb at the invitation of a state representative attended a town hall meeting that was convened to discuss with HISD Superintendent Grier whether he would appoint

Bernett Harris to succeed Caleb as principal at Key, the complaint alleges that Superintendent Grier called Caleb about 5 p.m. to ask if she would be present at the meeting and, if so, to apologize for Superintendent Grier's absence.  The complaint alleges that Caleb did relay the Superintendent's message and applauded the audience for attending the meeting and showing parental support for their children's education.  No allegation is made of Caleb making any controversial statement or any statement with which Grier disagreed, the plain inference being that Caleb's speech at the meeting was made in her role as an HISD principal, and at the instance of the Superintendent.  Caleb has alleged no facts to support her claim that she was speaking as a citizen and not as part of her public employment.

Caleb's speech the next day, on November 13, was in a non-public internal meeting between her and her supervisor, Superintendent Grier.  Her comments were not made public.  Grier was relating his views on the appointment of a new principal for Key, told Caleb that he had promised to attend a community meeting the next day at a church, and "abruptly asked Caleb, who had spoken for him the previous night, 'How do you speak to those people?'" Caleb thought the question carried an overtone of racial bigotry, and admonished him.  Caleb's comments to Grier, made in this private meeting between the HISD superintendent and an HISD principal concerning school administration issues and community

11

communications, does not constitute protected speech under the First Amendment.

Lastly, Caleb's speech to The Houston Chronicle in March, 2010 rebutting misconduct allegations made against her does not plainly constitute speech in her role as an HISD administrator. Because Caleb has stated facts regarding an adverse employment action she suffered within temporal proximity the following month,[10] and because she has alleged some facts in support of her claim that the protected speech motivated the adverse employment action,[11] Caleb has stated a claim for violation of her First Amendment right to free speech based on this incident.

2.   Anderson, Banks, Lenton, and Cockerham

Anderson, Banks, Lenton, and Cockerham also allege that their First Amendment rights to free speech were violated because they remained silent and/or refused to be dishonest when questioned about Caleb.[12]   The complaint contains detailed descriptions of the

---

[10] The nature of Caleb's departure from HISD is not completely clear, but the pleading alleges that Grier recommended to the Board of Trustees that she should be terminated without cause, and informed Caleb that her last day at HISD would be April 28, 2010. Document No. 48-1 at 31.

[11] Caleb also alleges that when Grier learned of Caleb's speech to The Houston Chronicle denying the allegations of impropriety, he made a comment regarding whether he would let her resign or fire her sooner. Id. at 25.

[12] Id. at 99.

experiences of Anderson, Banks, Lenton, and Cockerham in answering
questions from Defendants Kroger, Frizell, Majlat,[13] and others
regarding their knowledge of and/or involvement in various alleged
improprieties at Key that were under investigation.  The complaint
alleges that the investigators engaged in rude and abrasive
treatment of Plaintiffs when asking their questions, expressed
disbelief at the answers, and ridiculed Plaintiffs' answers.  The
complaint does not allege, however, that Anderson, Banks, Lenton,
and Cockerham made any protected speech or that they were deprived
of a constitutionally protected right to refrain from speaking.  In
all of the interviews, Anderson, Banks, Lenton, and Cockerham were
allegedly speaking, and at times making denials of accusations,
about their own job performances and their knowledge of Caleb's
activities at Key Middle School.  They were speaking as HISD
employees to HISD retained investigators in connection with an
official HISD investigation.  All of their speech was therefore
made pursuant to their official duties.  There are no facts alleged
to support a claim that they were speaking as private citizens in
any of these meetings.[14]   Anderson's, Banks's, Lenton's, and

---

[13] Whether Kroger, Frizell, and Majlat should be regarded as
state actors--at this pleading stage--is considered below at pages
21 through 24.

[14] Plaintiffs rely on the Second Circuit's holding in Jackler
v. Byrne, 658 F.3d 225 (2d Cir. 2011), in support of their free
speech claim.  Document No. 72 at 4.  Soon after the Jackler
decision, the District of Columbia Circuit--in denying rehearing in
Bowie v. Maddox, 653 F.3d 45, 48 (D.C. Cir. 2011), cert. denied,

Cockerham's claims that their First Amendment rights to free speech were violated are therefore dismissed.

B.   First Amendment Free Association Claims

Caleb claims that her First Amendment free association rights were also violated when she engaged in protected association by accepting State Representative Harold Dutton's invitation to attend the town hall meeting at New Mt. Calvary Baptist Church on November 12, 2009, and then spoke with Dutton after the meeting.[15]   Caleb also asserts that she exercised protected association in her political support of Dutton and HISD Board member Carol Mims Galloway, an alleged opponent of Grier,[16] but pleads no facts beyond her conclusory allegations that her political support of Dutton and Galloway resulted in any adverse action against her by HISD.   In support of her claim that Defendants violated her right to free association, Caleb asserts that Defendants had views that Caleb had "friends in high places," that she knew everything that went on at

---

132 S. Ct. 1636 (2012)--persuasively rejected the rationale of Jackler pointing out that under Garcetti v. Ceballos, 126 S. Ct. 1951 (2006), it is "only when public employees 'make public statements outside the course of performing their official duties' do they 'retain some possibility of First Amendment protection.'" Id. at 47 (quoting Garcetti, 126 S. Ct. at 1961).   The D.C. Circuit summarized, "The Second Circuit gets Garcetti backwards."  Id. at 48.   The Fifth Circuit appears not to have written on this point but this Court believes it would follow Garcetti and Bowie.

[15] Document No. 48-1 at 93.

[16] Id.

HISD, and that she had a "clique" at Key Middle School.[17] Plaintiffs Anderson, Lenton, and Cockerham, who were requested by Caleb to move with her from Key to Kashmere, also claim that they "exercised protected association with Caleb, in that they constituted members of what Majlat characterized to Anderson as Caleb's 'clique'."[18]

To establish a violation of one's First Amendment right to freedom of association, a plaintiff must show that (1) she suffered an adverse employment action, (2) her interest in "associating" outweighed the public employer's interest in efficiency, and (3) her protected activity was a substantial or motivating factor in the adverse employment action. Hitt v. Connell, 301 F.3d 240, 246 (5th Cir. 2002). "The Constitution does not include a 'generalized right of 'social association.'" Wallace v. Tex. Tech. Univ., 80 F.3d 1042, 1051 (5th Cir. 1996) (quoting City of Dallas v. Stanglin, 109 S. Ct. 1591, 1595 (1989)). The United States Supreme Court has determined that the First Amendment encompasses two categories of association: (1) the choice to enter into and maintain certain intimate human relationships, and (2) the right to associate for the purpose of engaging in expressive activities protected by the First Amendment--namely, speech, assembly,

---

[17] Id. at 94.

[18] Id. at 99.  Plaintiff Banks alleges no violation of protected association.

petition for the redress of grievances, and the exercise of religion. *See* id.; *see also* Ibarra v. Houston Indep. Sch. Dist., 84 F. Supp. 2d 825, 837 (S.D. Tex. 1999) (same).   Intimate relationships include marriage, the bearing of children, child rearing and education, and cohabitation with familial relatives. Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 107 S. Ct. 1940, 1945-46 (1987).   "Relationships with colleagues ordinarily are not afforded protection as intimate associations."   Hernandez v. Duncanville Sch. Dist., No. 3:04 CV 2028 BH(B), 2005 WL 3293995, at *10 (N.D. Tex. Dec. 5, 2005) (citing Swanson v. City of Bruce, Miss., 105 F. App'x 540, 542 (5th Cir. 2004)).

None of Plaintiffs has alleged any facts to support a claim that any intimate personal relationship caused their adverse employment actions.   The complaint alleges only professional relationships between Caleb, Anderson, Banks, Lenton, and Cockerham, and the same is true as regards Caleb's relationships with State Representatives Dutton and HISD Trustee Galloway.   None of Plaintiffs has stated a claim for a violation of the constitutional right to free association under the first category.

Furthermore, none of Plaintiff Caleb's alleged associations was for the purpose of carrying on a protected activity.[19] Representative Dutton invited Caleb, the outgoing principal at Key,

---

[19] None of the other Plaintiffs makes any allegations regarding the second category.

16

to attend a community/town hall meeting called to discuss the appointment of Caleb's successor at Key.  At the request of Superintendent Grier himself, Caleb spoke--as an HISD principal and Grier's spokesperson, to apologize for Grier's absence and went on to laud the attending citizens for their involvement in educational issues affecting the community's children.  Caleb's participation in the meeting, therefore, was not for the purpose of her engaging in constitutionally protected activity.  She was invited as a school principal and educational leader in the community and, when she attended, she delivered a message in behalf of and at the request of the Superintendent himself and added her own praise for the citizens' participation, as school superintendents and principals regularly do.  Plaintiff Caleb's pleading of these facts alone belies any conclusory claim that she was targeted for an adverse employment action because of her attendance at the community/town hall meeting or for visiting with one of its sponsors, Representative Dutton.  Caleb, Anderson, Banks, Lenton, and Cockerham have failed to allege facts sufficient to state a claim for a Constitutional violation of their rights to free association.

C.   Liberty-Interest Due Process Claims

Plaintiff Caleb asserts a deprivation of her liberty interests, a type of procedural due process claim under the

Fourteenth Amendment.  "[D]ischarge from public employment under circumstances that put the employee's reputation, honor or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." Rosenstein v. City of Dallas, Tex., 876 F.2d 392, 395 (5th Cir. 1989).[20]  See also Hughes v. City of Garland, 204 F.3d 223, 225 (5th Cir. 2000).  The Fifth Circuit has stated:

> [P]ublic officials do not act improperly in publicly disclosing charges against discharged employees, but they must thereafter afford procedural due process to the person charged.  Moreover, the process due such an individual is merely a hearing providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee.

Rosenstein, 876 F.2d at 395.  To prevail on a claim that a plaintiff's liberty interests were violated, the plaintiff must show: (1) that she was discharged; (2) that stigmatizing charges were made against her in connection with the discharge; (3) that the charges were false; (4) that she was not provided notice or an opportunity to be heard prior to her discharge; (5) that the charges were made public; (6) that she requested a hearing to clear

---

[20] A rehearing was granted by 884 F.2d 174 (5th Cir. 1989), and the panel opinion was reinstated in part by 901 F.2d 61 (5th Cir. 1990).  Certiorari was denied by 111 S. Ct. 153 (1990).

her name; and (7) that the employer refused her request for a hearing. Hughes, 204 F.3d at 226.[21]

The complaint is not a model of clarity as to whether Plaintiff Caleb requested and was denied a name-clearing hearing such as to support a liberty interest claim. It is alleged that Caleb was told, "the effective date of your separation from HISD will [sic] April 28, 2010." Caleb alleges she was not afforded due process before her demotion or discharge, and was "denied without due process of law . . . the opportunity to confront the charges and have a meaningful hearing to clear her name . . . ." Given that the allegations are construed favorably to Plaintiff on a Rule 12(b)(6) motion, and because a fact intensive issue such as this is better determined with an evidentiary record, the motion to dismiss this claim as to Caleb will be denied.

---

[21] The complaint alleges that "[W]hile Anderson, Cockerham, and Banks each had a due process hearing and were not terminated with the Texas Education Agency Independent Hearing Examiner's finding in each case the charges were unfounded by preponderance of the evidence, all (except Lenton) were vindicated . . . ." The three vindicated Plaintiffs allege no violation of their procedural due process rights. The plain implication of the allegation that "all (except Lenton) were vindicated," is that Lenton also had a due process, name-clearing hearing. Indeed, Lenton separately alleges no liberty-interest due process claim.

D.   <u>Equal Protection Claim</u>

Caleb alleges that Defendant Grier denied her equal protection of the law.[22]  "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." <u>Williams v. Bramer</u>, 180 F.3d 699, 705 (5th Cir. 1999).[23]  Caleb, a black woman, alleges that "Grier has denied her equal protection of the law in that he has treated her adversely while not treating adversely white Principals in whose schools occurred TAKS irregularities or cheating, and/or student record alterations, and/or permitting faculty to cause minors to serve alcoholic beverages for student credit, and/or alteration of student dropout documents, and/or other violations of law and policies."[24]  Later in the complaint Caleb claims that she was denied the same protections afforded to "white Principals or Associate Principals Crum, Mosteit, Wichmann, and Dambrino."[25] Apart from stating their race, Caleb alleges no facts regarding any of these individuals, their conduct as principals or associate

---

[22] <u>Id.</u> at 98-99.

[23] The class-of-one theory of equal protection does not apply in the public employment context.  <u>Engquist v. Ore. Dep't of Agr.</u>, 128 S. Ct. 2146, 2155-57 (2008).

[24] Document No. 48-1 at 98.

[25] <u>Id.</u> at 111.

principals, how they were similarly situated to her, or how any of the comparators was treated, or any other facts that would plausibly state a claim for a violation of her equal protection rights. Allegations must "raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. This claim is likewise dismissed.[26]

IV.   Kroger's, Frizell's, and Majlat's Motions to Dismiss

Plaintiffs assert First Amendment retaliation claims and a Fourteenth Amendment due process claim against Defendants Kroger, Frizell, and Majlat. Kroger, Frizell, and Majlat move to dismiss the claims against them because they are not state actors and Plaintiffs have not alleged facts to support a conspiracy that might render them liable despite not being state actors. They further move for dismissal on the grounds that, even if they were state actors, Plaintiffs have not stated a claim against them for violations of Plaintiffs' constitutional rights.

To state a viable claim under § 1983, "a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state

---

[26] Caleb is the only Plaintiff who asserts an equal protection claim. Although the claim is only made against Defendant Grier, to the extent that it may be construed to be alleged also against HISD, it is also dismissed.

law." Leffall v. Dallas Indep. Sch. Dist., 28 F.3d 521, 525 (5th Cir. 1994).  "[T]he party charged with the deprivation [of a federal right] must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." Lugar v. Edmondson Oil Co., Inc., 102 S. Ct. 2744, 2754 (1982).  Determining whether a party's conduct constitutes state action is a "necessarily fact-bound inquiry." Id. at 2755; Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 121 S. Ct. 924, 932 (2001).  The fact that an individual is not a full-time public employee with the state entity does not preclude that person from being considered to be acting under color of law. See West v. Atkins, 108 S. Ct. 2250, 2259 (1988) ("The fact that the State employed respondent pursuant to a contractual arrangement that did not generate the same benefits or obligations applicable to other 'state employees' does not alter the analysis.  It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State.").

The complaint alleges that Kroger, Frizell, and Majlat were working for HISD to conduct an investigation into the alleged improprieties at Key.  The complaint alleges that investigations were generally conducted by HISD's Department of Professional

Standards,[27] implying that Kroger, Frizell, and Majlat were performing duties normally carried out by HISD staff. Plaintiffs' claims all arise out of Kroger's, Frizell's, and Majlat's conduct in performing the investigation, and in Kroger's role in allegedly leaking the report for publication. At the pleading stage, therefore, Plaintiffs have stated sufficient facts to support the assertion that Kroger, Frizell, and Majlat were acting under color of law during the course of their investigation.

Defendants Kroger, Frizell, and Majlat also move for dismissal on the basis that Plaintiffs fail to allege facts to support a claim that these Defendants violated Plaintiffs' Constitutional rights. "Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 129 S. Ct. at 1948.

For the reasons explained at length above as to why Plaintiffs' claims against HISD and Grier are deficient, those same claims are likewise insufficient to state a plausible right to relief against Kroger, Frizell, and Majlat. Moreover, as to all claims alleged against Kroger, Frizell, and Majlat, Plaintiffs fail to allege that these Defendants had any authority to make decisions regarding any of Plaintiffs' employments and allege nothing but conclusory allegations that Kroger, Frizell, and Majlat had any

---

[27] Document No. 48-1 at 6.

role in making those decisions.  The complaint alleges that Kroger, Frizell, and Majlat conducted their investigations in a manner that was abrasive, insulting, and demeaning to Plaintiffs.  The complaint further alleges that Kroger was involved in leaking the investigation report to the press.  These do not state constitutional violations of Plaintiffs' rights even if the outside lawyers were regarded as state actors.  The complaint charges Grier with initiating termination proceedings against each of Plaintiffs and complains of some review procedures conducted by HISD as part of HISD's process.  Plaintiffs fail to allege any facts to support an assertion that Kroger, Frizell, or Majlat had any role in deciding whether Plaintiffs should be terminated, or that they were the decision makers in any other *adverse employment action* against any Plaintiff.  Plaintiffs do not allege that Kroger, Frizell, and Majlat owed Plaintiffs any process, or that they had any control over deciding whether to give Plaintiffs a name-clearing hearing.  Plaintiffs allege no facts that would raise their right to relief against any of these individuals above the speculative level.  Accordingly, Plaintiffs' claims against Defendants Kroger, Frizell, and Majlat are dismissed.

V.   <u>Order</u>

For the foregoing reasons, it is

ORDERED that Defendants David Frizell and Esteban Majlat's Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 59) and Defendant Elizabeth Mata Kroger's Third Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 60) are both GRANTED, and all claims made by Plaintiffs Mable Caleb, Jackie Anderson, Diann Banks, Herbert Lenton, and Patrick Cockerham against Defendants Frizell, Majlat, and Kroger are DISMISSED WITH PREJUDICE.  It is further

ORDERED that Defendants Houston Independent School District's and Terry Grier's Second Motion to Dismiss Pursuant to Rule 12(b)(6) (Document No. 64) is GRANTED in its entirety as to the claims of Plaintiffs Anderson, Banks, Lenton, and Cockerham, and all claims made by Plaintiffs Anderson, Banks, Lenton, and Cockerham against these Defendants are DISMISSED WITH PREJUDICE; and Defendants HISD's and Terry Grier's Second Motion to Dismiss is GRANTED in part as to Plaintiff Caleb, and otherwise DENIED, and all claims by Plaintiff Caleb against Defendants Houston Independent School District and Terry Grier are DISMISSED WITH PREJUDICE, except only for Plaintiff Caleb's claims that Defendants HISD and Terry Grier retaliated against her for making protected speech to <u>The Houston Chronicle</u> in response to the report published regarding her alleged misconduct, and Plaintiff Caleb's claim that

Defendants HISD and Grier deprived her of her liberty interest by denying her a procedural due process hearing to clear her name.

The Clerk will enter this Order and provide a correct copy to all parties.

SIGNED at Houston, Texas, on this <u>13th</u> day of June, 2013.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE